IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THADDEUS RICHARDSON, ) | |
| Reg. No. 32639-034 , ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO. 2:17-CV-39-WHA |
| ) | [WO] |
| WALTER WOODS, ) | |
| ) | |
| Respondent. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

This case is before the court on a 28 U.S.C. § 2241 petition for writ of habeas corpus filed by Thaddeus Richardson, a federal inmate confined at the Montgomery Federal Prison Camp.  In this petition, Richardson challenges the constitutionality of a disciplinary action imposed upon him for attempted introduction of contraband into a correctional facility in December 2013 during his confinement at FPC Oakdale, Louisiana.[1]  Specifically, Richardson alleges that (1) he is not guilty of the charged offense (Doc. 1 at 6); (2) he believes a former Drug Enforcement Administration ("DEA") agent "used his influence with the Bureau of Prisons ("BOP") to "set [him] up" and served as a confidential informant in the disciplinary proceedings (Doc. 1 at 7); (3) a discrepancy exists between the charged offense and the evidence presented against him (Doc. 15 at 9); (4) he was not aware that an attempt to commit an offense constituted a

---

[1] This disciplinary action arose from an incident that occurred on November 2, 2013.

prohibited act, thereby depriving him of due process (Doc. 15 at 11); (5) the code section under which he was disciplined, Code 111A, is non-existent (Doc. 15 at 10); (6) the incident report was not prepared by a staff member who actually witnessed the alleged conduct as required by the applicable disciplinary policy (Doc. 15 at 12–13); (7) he was denied the opportunity to call witnesses because the charging document did not identify those persons who actually witnessed the alleged offense (Doc. 22 at 10); and (8) the disciplinary charge resulted from a conspiracy by federal officials to deprive him of his constitutional rights. Doc. 1 at 7. As a result of this disciplinary action, Richardson lost 41 days of good time and was fined $500. Richardson seeks expungement of the disciplinary, return of the $500 fine, and restoration of his good time. Doc. 1 at 8.

The respondent denies any violation of Richardson's constitutional rights during the disciplinary proceedings. Doc. 21 at 4–5.[2] Specifically, the respondent asserts that the disciplinary proceeding comported with the due process protections afforded by *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1973), and at least "some evidence" supported the disciplinary hearing officer's finding of guilt as required by *Super., Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

## II. DISCUSSION

**A.**     **Lack of Knowledge of Prohibited Conduct and Attempt as an Offense**

Richardson alleges he had no knowledge that an attempt to commit the offense of introducing contraband into a federal prison facility constituted conduct prohibited by

---

[2] Although the respondent initially raised exhaustion as a defense, he later abandoned this argument and now maintains that Richardson has exhausted his administrative remedies. Doc. 38 at 1 ("Respondent hereby withdraws his argument asserting that Petitioner's claims are procedurally barred from review by the court for failure to exhaust his administrative remedies.").

applicable disciplinary rules. Richardson cites *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994), as support for this assertion. In *Reeves*, an inmate housed in solitary confinement with no access to prison rules, placed his food tray on the outside of his cell and received a disciplinary "for violating a rule requiring all food trays . . . to remain inside the inmate's cell until they are picked up." *Reeves*, 19 F.3d at 1061. Under these circumstances, the Fifth Circuit held that Reeves "was entitled to a fair warning, or fair opportunity to know, that his conduct was prohibited before being punished for that conduct[.]" *Id.* at 1062.

The respondent maintains the documents filed by Richardson show he had fair notice that an attempt to introduce unauthorized narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia into a federal prison constituted a violation of federal disciplinary rules because upon his placement at FPC Oakdale he acknowledged receiving a copy of the Prohibited Acts and Disciplinary Severity Scale. *See* Doc. 22-6. The list of "prohibited acts" in effect at the time of Richardson's incarceration at FPC Oakdale identifies the "[i]ntroduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff" as a disciplinary offense. Doc. 31-1 at 56 (Program Statement No. 5270.09, Table 1). Furthermore, the initial statement regarding prohibited acts specifically advises that "[a]iding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself." Doc. 31-1 at 10. The Program Statement further directs that "[i]n these cases, the letter 'A' is combined with the offense code [to denote an attempt]." Doc. 31-1 at 11. The respondent further argues

that Richardson, who admits knowledge of the underlying offense, had fair reason to know that an attempt to commit this offense would constitute a violation of the rules. Doc. 26 at 5–6 ("[I]t is disingenuous for any prisoner to put forth the argument that he did not know that attempting to bring contraband into a prison institution would be a prohibited act. . . . The fact Petitioner did not ask his wife to bring the contraband through the front door of the prison during her visit, or send the contraband through the United States mail, is a clear indicator that Petitioner knew he was attempting to commit a prohibited act."). Finally, Richardson concedes that he could have reviewed "the Code of Federal Regulations version or the complete Inmate Discipline Program statement" prior to his receipt of the challenged disciplinary by accessing these materials in the inmate law library, but complains he could only receive a copy of these documents upon "pay[ment] for such reproduction." Doc. 22 at 6.

After reviewing the evidence contained in the record, the court finds that Richardson knew or had reason to know that attempting to introduce drugs, alcohol or other items considered contraband into the prison camp constituted a prohibited act.

**B.      Challenges to Disciplinary Proceeding**

Richardson argues that he did not have an opportunity to call witnesses at his disciplinary hearing. He also challenges the determination of guilt made by the Disciplinary Hearing Officer ("DHO"). Under the circumstances of this case, these claims provide no basis for relief.

On December 1, 2013, SIS Technician D. Reeves compiled an incident report for a Code 111-A violation and served a copy of this report on Richardson. In this report, Reeves stated as follows:

> Upon the conclusion on 12-01-2013, of a thorough and complete SIS investigation . . . it was proven that inmate Thaddeus Richardson #32639-034 planned and instructed his wife and kids to make a drop off containing hazardous contraband on federal property beside the Barksdale Federal Credit Union, across the street from [FPC Oakdale].
>
> The contraband items found were 1 liter bottle of alcohol, 1 bottle of Creatine X3, 1 bottle Hydroxycut, two packs of cigarettes, 6 mosquito repellant wristbands, 1 tooth whitening pen and a pack of (50) dental flosser picks. The alcohol was tested with the Alco 3 Sensor with the results of .483 reading. The Alco Sensor . . . was calibrated by the SIS department on 11-01-2013.

Doc. 11-6 at 2.

Upon serving Richardson with a copy of the incident report, Reeves interviewed Richardson regarding the attempted introduction into a BOP facility of contraband items, including alcohol, made the basis of the incident report.

> In the Interview with inmate Richardson he stated "yes I admit that on a previous visit with my family me and my 17 year old son discussed and planned for the drop to take place on 11-02-2013 after the completion of our next visit. My wife and two daughters visited me on Saturday 11-02-2013 and after the visit they made the drop for me. I was just trying to fit in at the camp. It was planned to have another camper on a gator to pick up the items for me. I am sorry that I involved my family. But I do take full responsibility for my actions."

Doc. 11-6 at 2. Richardson also implicated two other inmates in the offense. Doc. 11-6 at 2. The Disciplinary Committee referred the charge to the DHO for a hearing. Doc. 11-6 at 2.

On December 4, 2013, a staff member served Richardson notice of the disciplinary hearing for "[i]ntroduction of drugs/alcohol, Attempted." Doc. 11-7 at 2. Richardson signed the notice acknowledging receipt of service of the disciplinary charge and, although provided an opportunity to do so, did not identify any witnesses at this time. Doc. 11-7 at 2. "Richardson appeared at the hearing and acknowledged receiving a copy of the incident report. He declined a staff representative and did not request a witness." Doc. 11-8 at 2. The DHO did not call witnesses on Richardson's behalf as he failed to identify any witness either at the time of service of the disciplinary or at the time of the disciplinary hearing.

During the disciplinary hearing, the DHO allowed Richardson to present evidence in his defense. "Inmate Richardson stated, he had no knowledge about the contraband that was left besides the Credit Union. When staff interviewed him during the investigation, he did make an admission to them; however, [he said] he only made that admission because he thought his wife was going to be charged with a crime and he wanted to protect her. And during the initial hearing with his Unit Team he made no admission at all and the statement documented by his Unit Team is untrue." Doc. 11-8 at 2. The DHO also entered the Incident Report and findings of the investigation into evidence, including photographs. Doc. 11-8 at 2.

> The incident report indicated that on December 1, 2013, after completion of an investigation it was determined that Thaddeus Richardson, Reg. No. 32639-034, planned and instructed his wife and children to deposit and hide significant contraband at the Credit Union across the street from the Camp for later retrieval. Specifically, a search of the area in question was conducted on November 2, 2013, and staff recovered one liter of intoxicants testing 0.483 with the Alco-Sensor III, one bottle of Creatine

6

> X3, one bottle of Hydroxycut, and two packs of cigarettes. During the investigation, inmate Richardson admitted discussing the planting of the contraband and how his wife was going to drop the contraband off after their visit on the day in question. The plan was for her and the children to drop off the contraband for later pick up by another inmate driving a Gator (work vehicle).
>
> To support the charge of attempted introduction of intoxicants, staff conducted an investigation which detailed the incident. The investigation documented that on November 2, 2013, staff reported a suspicious vehicle at the Credit Union across the street from the Camp. It was reported that a woman driving a black two door Cadillac license plate number 20625 placed unknown items in the bushes next to the building. The subsequent search of the area produced the contraband noted in the incident report and review of inmate visiting documents showed the car was driven by inmate Richardson's wife. During the investigation, inmate Richardson told the investigator he planned to have his wife drop off the contraband in an attempt to make friends with inmate Johnny Hicks . . . and Jose Ipina . . . because they had requested the intoxicants and cigarettes.
>
> As to inmate Richardson's argument that he had no knowledge of the contraband the DHO finds inmate Richardson lacks credibility. Inmate Richardson contends he only made the initial admission to the investigator because he feared for his wife, so he was going to try and take the blame. Then during the initial hearing with his Unit Team, he made no such admission, thus his Unit Team are lying. No, in this case inmate Richardson is lying. It is a requirement of the reporting staff members' position as BOP employees to always report incident(s) accurately and the DHO has no reason to assume this is not the case. Based on this[,] the DHO gives inmate Richardson's simple denial no evidentiary weight.

Doc. 11-8 at 3–4.

Upon completion of the noticed disciplinary hearing and after considering all of the evidence, the DHO adjudged Richardson guilty of the charged offense. Doc. 11-8 at 4. Specifically, the DHO found that "inmate Richardson committed the prohibited act as charged." Doc. 11-8 at 4. The DHO advised that he based his findings "on the description of the of [the] incident from the reporting staff member attesting that inmate

Richardson organized the drop off of contraband . . . and the investigation conducted that determined it was inmate Richardson's wife who dropped off the contraband[.]" Doc. 11-8 at 4. The sanctions imposed upon Richardson for this disciplinary infraction consisted of loss of 41 days of good time, confinement in disciplinary segregation for six months, a $500 fine and loss of visitation privileges for two years. Doc. 11-8 at 4.

In *Wolff*, the United States Supreme Court determined that in the context of a prison disciplinary proceeding where a protected liberty interest is implicated—*i.e.*, the loss of good time—the Due Process Clause requires the provision of three procedural protections: (1) advance, written notice of the charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563–66. Furthermore, at a prison disciplinary hearing, the requirements of due process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer. *Hill*, 472 U.S. at 454. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." *Id*. at 455. It is not the function of this court to assume the task of retrying prison disciplinary disputes, and no *de novo* review of a hearing officer's factual findings is required when the decision is supported by some evidence. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.), *cert. denied*, 455 U.S. 992 (1982). "In ascertaining whether [the "some evidence"] standard has been met, courts are not required to examine the entire record, independently assess witness credibility, or weigh

the evidence." *Kenney v. Barron*, 239 F. App'x 494, 495 (11th Cir. 2007) (citing *Hill*, 472 U.S. at 455). This court must only determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary [hearing officer]." *Hill*, 472 U.S. at 455–56; *Reeves*, 19 F.3d at 1062 (holding that a "prison disciplinary will be overturned only where there is no evidence whatsoever to support the decision of the prison officials").

With respect to Richardson's claim alleging a lack of witnesses, the record establishes that Richardson was provided an opportunity to call witnesses but simply failed to do so. Doc. 11-7 at 2 & Doc. 11-8 at 2–3. In addition, the record is devoid of evidence showing that a former DEA agent served as a confidential informant or that this agent in any way impacted the investigation conducted by prison officials.

Insofar as Richardson alleges that he did not attempt to bring contraband into FPC Oakdale and therefore is not guilty of the charged offense, this claim goes to the validity of the DHO's finding of guilt—specifically, whether this finding is supported by "some evidence" as required by *Hill*. In this circumstance, the court must not undertake to retry Richardson's prison disciplinary action, nor is a *de novo* review of the DHO's factual findings required, "but the court[] must consider whether at least the decision is supported by some facts—whether any evidence at all supports the action taken by prison officials." *Rabalais*, 659 F.2d at 545. Under this standard of review, a federal court cannot "be forced into the role of judging and reweighing the evidence presented in a prison disciplinary hearing. The role of this court is to determine whether an inmate receives the procedural protections provided by *Wolff* and whether 'some evidence'

9

supports the hearing officer's determination." *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994). In so doing, this court is "limited in its review of the findings made during prison disciplinary proceedings and need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence in determining whether the prison disciplinary [officer's] decision is supported by 'some evidence.'" *Terrelonge v. Wells*, 2010 WL 23055, at *3–5 (S.D. Ga. Jan. 4, 2010) (citing *Hill*, 472 U.S. at 455); *Young*, 37 F.3d at 1460; *Kenney v. Barron*, 239 F. App'x 494, 495–96 (11th Cir. 2007) (holding that "[i]n ascertaining whether [the "some evidence"] standard has been met, courts are not required to examine the entire record, independently assess witness credibility, or weigh the evidence. . . . [because] the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board") (internal quotation marks and citation omitted). Simply put, the role of this court with respect to Richardson's claim alleging he is not guilty of the offense "is to determine . . . whether 'some evidence' exists which supports the hearing officer's determination [of guilt]." *Young*, 37 F.3d at 1460.

In this case, the court finds that the "some evidence" requirement has been met. Specifically, the incident report, containing details of the SIS investigation, provides some evidence to support the DHO's determination of guilt. Because some evidence supports the DHO's finding that Richardson attempted to bring contraband into FPC Oakdale, he is due no relief on his claim challenging the finding of guilt.

A thorough review of the disciplinary report and other evidence likewise demonstrates that the disciplinary proceeding comported with all of the requirements of

*Wolff*. Prison officials furnished Richardson with advance written notice of the charge against him; allowed him the opportunity to call witnesses and present evidence in his own behalf; and provided written statements by the factfinder of the evidence supporting his guilt and the reasons for the disciplinary action. Docs. 11-7 at 2 & 11-8 at 2–5. Additionally, as previously determined, the incident report provides some evidence to support the decision of the hearing officer. Nothing more is required by the Constitution. It is therefore clear that Richardson received all the process to which he was due in the disciplinary proceeding.

### C.     Preparation of Incident Report by Non-Witness Staff Member

Richardson complains that a staff member who did not witness the alleged conduct prepared the incident report in violation of the applicable federal regulation. *See* 28 C.F.R. § 541.5(a) (Contained in Program Statement No. 5270.09, Chapter 2), Doc. 31-1 at 18. However, this claim is foreclosed by the regulation at issue, which provides that "[w]hen staff witness or reasonably believe that a violation of Bureau regulations has been committed, staff must prepare an incident report[.]" 28 C.F.R. § 541.5(a). Moreover, infringements of agency rules, regulations or procedures do not, without more, amount to constitutional violations. *Sandin*, 515 U.S. at 484–86; *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (holding that mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres*, 440 U.S.

11

741, 751–52 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (same).

For these reasons, Richardson is entitled to no relief on his claim challenging the preparation of the incident report.

**D.     Allegation of a Conspiracy**

*1.     The Civil Conspiracy Claim*

Richardson makes the specious and unsupported allegation that the adverse actions about which he complains resulted from a conspiracy among prison officials to deprive him of his constitutional rights during the disciplinary proceeding. The respondent adamantly denies any conspiracy by prison officials.

To proceed on a conspiracy claim related to an alleged constitutional violation, a petitioner "must show that the parties reached an understanding to deny the [petitioner] his or her rights [and] prove an actionable wrong to support the conspiracy. . . . [T]he linchpin for conspiracy is agreement[.]" *Bailey v. Bd. of Cnty. Commrs. of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (internal quotation marks and citations omitted), *cert. denied*, 506 U.S. 832 (1992). In order "to establish the understanding or willful participation required to show a conspiracy, . . . [a petitioner] must [produce] some evidence of agreement between [prison officials.]" *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1283–84 (11th Cir. 2002) (internal citations omitted). Merely "stringing together" acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Other than his suppositious and conclusory allegation of a conspiracy, Richardson presents nothing to establish an actual conspiracy nor can this court discern any evidence in the record which would indicate that prison officials entered into a conspiracy to deprive Richardson of his constitutional rights. The court finds that Richardson's bare allegation of a conspiracy is insufficient to support issuance of relief in this habeas action. *Harvey*, 949 F.2d at 1133; *Fullman v. Graddick*, 739 F.2d 553, 556–56 (11th Cir. 1984) (holding that a vague and conclusory conspiracy allegation fails to state a claim upon which relief can be granted).

    2.    *Potential Claims Under 18 U.S.C. § 241 and § 242*

To the extent Richardson seeks relief for alleged criminal actions purportedly committed in violation of his constitutional rights as prohibited by 18 U.S.C. § 241 and § 242, his request for relief is without merit. "Title 18 U.S.C. § 241 is a statute that criminalizes conspiracies against a person's rights under the Constitution or laws of the United States. There is no private right of action under this criminal statute. . . . Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States. The statute does not create a private cause of action." *Gipson v. Callahan*, 18 F. Supp. 2d 662, 668 (W.D. Tex 1997) (internal citations omitted); *Rockefeller v. U.S. Ct. of App. Office for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (D.D.C 2003) (holding that an individual is foreclosed "from asserting claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action [and therefore] the Court must dismiss the [prisoner's] claims that have been brought pursuant to 18 U.S.C. §§ 242 and 371").

In light of the foregoing, Richardson is precluded from obtaining relief under 18 U.S.C. § 241 and § 242.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The 28 U.S.C. § 2241 petition for habeas corpus relief filed by Thaddeus Richardson be DENIED.

2.  This case be DISMISSED with prejudice.

It is further ORDERED that on or before **December 28, 2018** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 10th day of December, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE